## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 19 2015, 10:03 am
CLERK
of the supreme court,
court of appeals and
tax court

**ATTORNEY FOR APPELLANT**

Leanna Weissmann
Lawrenceburg, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Agnes E. Ande,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 19, 2015

Court of Appeals Case No.
15A04-1409-CR-452

Appeal from the Dearborn Superior Court
The Honorable Jonathan N. Cleary, Judge
Case No. 15D01-1310-FA-27

**Bradford, Judge.**

# Case Summary

[1] In 2012, authorities received reports of high traffic at Appellant-Defendant Agnes Ande's home in St. Leon, Indiana. On August 29, 2012, Indiana State

Police Detective Tim Wuestefeld purchased oxycodone from Ande at her home, which home was located within 1000 feet of a school, during school hours. Appellee-Plaintiff the State of Indiana charged Ande with Class A felony dealing in a schedule II controlled substance.

In March of 2014, Ande pled guilty as charged. Three days later, Ande moved to withdraw her guilty plea and for the appointment of experts to determine her competence to stand trial. Ande argued that her guilty plea could not have been voluntary because she was "mentally retarded[,]" was illiterate, and was the subject of a guardianship. The trial court appointed two experts to evaluate Ande, and both concluded that she was competent to stand trial and was feigning symptoms of mental illness. The trial court denied Ande's motion to withdraw her guilty plea and ultimately sentenced her to twenty-eight years of incarceration, with three suspended to probation. Ande contends that the trial court abused its discretion in denying her motion to withdraw her guilty plea and that her sentence is inappropriately harsh. We affirm.

## Facts and Procedural History

In 2012, authorities began receiving reports of high traffic at Appellant-Defendant Agnes Ande's home in Sunman. Ande moved to St. Leon, and high activity was observed there as well. On August 29, 2012, at the intersection of State Road 46 and Trojan Lane in Dearborn County, which was within 1000 feet of East Central High School, Ande sold oxycodone to Detective Wuestefeld. On October 28, 2013, the State charged Ande with Class A felony

dealing in a schedule II controlled substance. On March 17, 2014, Ande, represented by counsel, pled guilty as charged without a written plea agreement. After being fully advised of her rights and indicating that she understood each one of them, Ande indicated that she suffered from depression, but when asked if she "fully understood everything in today's hearing[,]" indicated "[t]o [her] knowledge, yeah." Tr. pp. 18-19.

[4] On March 20, 2014, Ande filed an emergency motion to withdraw her guilty plea and for a psychiatric evaluation to determine her competence to stand trial. Ande argued that her plea could not have been voluntary because she was "mentally retarded[,]" could not read or write, and was the subject of an open guardianship over her person out of Ripley County. Tr. p. 26. The CCS for the guardianship case indicated the guardian had moved to terminate the guardianship in 2005, the hearing on the motion was continued several times due to failure of service on Ande (then Agnes Bradley), and the CCS contained no entries after September 13, 2006. Moreover, Ande introduced no evidence at any point that the guardianship was active, in any normally-understood sense of the word. After a hearing on Ande's motions, the trial court appointed two experts to evaluate her for competence and took her motion to withdraw her guilty plea under advisement.

[5] Clinical Psychologist Dr. Sarah Lacey-Horine, Psy.D., evaluated Ande and opined that she was competent to stand trial and that "[i]t is possible that she was feigning some of her symptoms due to the belief that it may help her to get out of trouble." Appellant's App. p. 107. Psychiatrist Dr. Joseph V. Cresci,

M.D., evaluated Ande and concluded that, "In response to her manipulations and faking mental illness, it is my psychiatric opinion that she is able to stand trial and to maintain responsibility for her behavior." Appellant's App. p. 110. On August 5, 2014, following a hearing, the trial court denied Ande's motion to withdraw her guilty plea. After a sentencing hearing on September 2, 2014, the trial court sentenced Ande to twenty-eight years of incarceration, with three suspended to probation.

# Discussion and Decision

## I. Whether the Trial Court Abused its Discretion in Denying Ande's Motion to Withdraw Guilty Plea

[6] Indiana Code section 35-35-1-4 governs the withdrawal of guilty pleas and provides, in part, as follows:

> After entry of a plea of guilty, or guilty but mentally ill at the time of the crime, but before imposition of sentence, the court may allow the defendant by motion to withdraw his plea of guilty, or guilty but mentally ill at the time of the crime, for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea…. The ruling of the court on the motion shall be reviewable on appeal only for an abuse of discretion. However, the court shall allow the defendant to withdraw his plea of guilty, or guilty but mentally ill at the time of the crime, whenever the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice.

"The trial court's ruling on a motion to withdraw a guilty plea arrives in our Court with a presumption in favor of the ruling." *Johnson v. State*, 734 N.E.2d

242, 245 (Ind. 2000). "One who appeals an adverse decision on a motion to withdraw must therefore prove the trial court abused its discretion by a preponderance of the evidence." *Id.* "We will not disturb the court's ruling where it was based on conflicting evidence." *Id.*

## A. Manifest Injustice

Indiana Code section 35-35-1-4(c) provides, in relevant part, as follows:

> For purposes of this section, withdrawal of the plea is necessary to correct a manifest injustice whenever:
> (1) the convicted person was denied the effective assistance of counsel;
> (2) the plea was not entered or ratified by the convicted person;
> (3) the plea was not knowingly and voluntarily made;
> (4) the prosecuting attorney failed to abide by the terms of a plea agreement; or
> (5) the plea and judgment of conviction are void or voidable for any other reason.

Ande contends that the fact that she was subject to an open guardianship when she pled guilty renders the plea a manifest injustice that the trial court was required to correct. Ande's argument essentially is that incapacity can be inferred from her open guardianship, rendering her plea unknowing and involuntary.

Ande has failed to establish that her guilty plea must be withdrawn in order to correct a manifest injustice. First, Ande's argument is premised on the notion that the same criteria are used to define an "incapacitated person" for purposes of a legal guardianship and declare a person incompetent to stand trial, which is not the case. Indiana Code section 35-36-3-1 defines incompetence to stand

trial as "lack[ing] the ability to understand the proceedings and assist in the preparation of a defense[.]" Pursuant to Indiana Code section 29-3-1-7.5,

> "Incapacitated person" means an individual who:
> (1) cannot be located upon reasonable inquiry;
> (2) is unable:
> (A) to manage in whole or in part the individual's property;
> (B) to provide self-care; or
> (C) both;
> because of insanity, mental illness, mental deficiency, physical illness, infirmity, habitual drunkenness, excessive use of drugs, incarceration, confinement, detention, duress, fraud, undue influence of others on the individual, or other incapacity; or
> (3) has a developmental disability (as defined in IC 12-7-2-61).

[10] While there obviously could be some overlap between the two concepts, that is far from necessarily the case. Indeed, the guardianship at issue in this case was originally sought and awarded to Ande's mother in 1985 "by reason of her incapacity in being able to care for her financial affairs and person[.]" Appellant's App. p. 69. The petition for the appointment of a guardian included allegations that Ande had been diagnosed with "Mental Retardation" and was at a third-grade level in reading and arithmetic. Appellant's App. p. 64. Even assuming that Ande's low mental functioning prevented her from adequately taking care of herself or her financial affairs at one point, it does not follow that it would prevent her from understanding criminal proceedings or assisting in her defense.

[11] Moreover, there is no indication that the guardianship, while technically still open, has been active in any real sense since 2002, when Ande's mother was removed as her original guardian and replaced by V. Jeanne Calhoun, the sister

of her then-boyfriend. Calhoun petitioned the guardianship court for removal as Ande's guardian on May 9, 2005, alleging that Ande was capable of handling her own affairs; Ande had, in fact, done so since February of 2002; and Calhoun had had "minimal to no contact" with Ande since being appointed as her guardian. Appellant's App. p. 85. Ande points to no evidence to refute these allegations, and it appears that the only reason the petition for removal was not granted was because attempts to serve Ande with it were unsuccessful. In short, even to the extent that a legal guardianship would affect Ande's ability to knowingly and voluntarily plead guilty, the record indicates that Ande has been living independently of her guardian since 2002. The mere existence of a dormant guardianship does not establish that Ande's guilty plea was a manifest injustice.

[12]  Finally, Ande makes no attempt to refute the conclusions drawn by the experts appointed by the trial court to evaluate her competency, who both concluded that she was competent to stand trial and seemed to be faking symptoms of mental illness. While a finding that Ande was unable to comprehend the criminal proceedings against her would support a conclusion that her guilty plea was not knowing and voluntary, such a finding was not made. Ande has failed to establish that the withdrawal of her guilty plea was necessary to correct a manifest injustice.

## B. Fair and Just Reason

[13]  Ande contends that even if granting her motion to withdraw her guilty plea was not necessary to correct a manifest injustice, the trial court still abused its

discretion in failing to find a fair and just reason. Ande argues that the evidence establishes that she has had to depend on others due to her diminished mental capacity–first her mother, then her aunt, and now her husband. Even if we assume that Ande does rely on others to help her, this does not establish that withdrawal of her guilty plea would be fair and just. As mentioned, before she pled guilty, Ande was fully advised of her rights and indicated that she fully understood the proceeding. Ande points to self-serving testimony that she is illiterate and that she only pled guilty because she was in jail and therefore assumed she was automatically guilty in any event. The trial court was not required to credit this evidence, and apparently did not. Ande has failed to establish that the trial court abused its discretion in denying her motion to withdraw her guilty plea.

## II. Whether Ande's Sentence is Inappropriate

[14]   We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). The trial court sentenced Ande to twenty-eight years of incarceration, with three suspended to probation. The sentencing

range for a Class A felony is twenty to fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4.

[15] The nature of Ande's offense justifies her sentence. Ande sold oxycodone to an undercover police officer in her driveway during school hours, and Ande's residence and East Central High School both lie on Trojan Lane. The police officer was able to observe "numerous kids at the soccer fields for gym class right there on Trojan Lane." Tr. p. 89. Following Detective Wuestefeld's purchase, he and Ande discussed future transactions. Ande told Detective Wuestefeld that she did not "normally" conduct business in her driveway because of "nosy neighbors" and discussed another customer of hers who received a volume discount. Tr. p. 90. Detective Wuestefeld testified to a subsequent purchase in Ripley County, where he purchased fifteen oxycodone tablets for $300.00 and Andre "seemed a little upset" that he did not purchase more. Tr. p. 94. The record indicates that Ande's offense was not an isolated incident.

[16] Ande's character also justifies her sentence. Between 2004 and 2012, Ande had several contacts with the criminal justice system, including a 2004 charge for trafficking with an inmate that was dismissed, a 2005 charge for theft that was dismissed, a 2006 conviction for conversion, a 2009 charge for shoplifting in Kentucky that is listed as "fugitive[,]" 2011 charges for battery and interference with reporting of a crime, a 2012 charge for invasion of privacy, and a 2012 charge for dealing in oxycodone in Ripley County. Appellant's App. p. 117. Significantly, Ande does not deny the wrongdoing that resulted in many of her

dismissed charges, admitting to smuggling cigarettes to her incarcerated husband in 2004, stealing a "tube of foot … medicine" in 2005, and "chang[ing] the price tags on a meat thing in Kentucky at Kroger's" in 2009. Tr. pp. 124, 125. In summary, although it appears that Ande experiences moderate cognitive impairment, she appears to fully understand her behavior and its possible consequences. Yet, Ande has failed to take responsibility for her actions, repeatedly trying to deflect blame for her actions onto her husband and unsuccessfully attempting to feign mental illness. The trial court imposed a sentence much closer to the minimum sentence for a Class A felony than the maximum and less than the advisory sentence of thirty years. Ande has not established that a further reduction in her sentence is appropriate.

[17] The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.